| | |
|---|---|
| TERRY BEVILL, <br> *Plaintiff*, <br> v. <br> CITY OF QUITMAN, TEXAS, *et al.*, <br> *Defendants*. | § <br> § <br> § Civil Action No. 4:19-cv-00406 <br> § Judge Mazzant <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Tom Castloo, James "Jim" Wheeler and Wood County's Motion to Transfer Venue (Dkt. #22).

After reviewing the pleadings, motion, response, and reply, the Court finds the motion should be **DENIED**.

## BACKGROUND

### I. Factual Background

At the time the events giving rise to this lawsuit occurred, Plaintiff Terry Bevill was the Captain of the Quitman Police Department ("Quitman PD") and an instructor at the Kilgore Police Academy. On or around February 8, 2017, while Plaintiff still occupied his position with Quitman PD, a man named David McGee ("Mr. McGee") was arrested and charged with facilitating or permitting the escape of an inmate from the Wood County jail and with tampering with government records while employed as a Wood County jail administrator. Mr. McGee's arrest apparently attracted pretrial publicity in the area.

Recognizing the publicity of the circumstances surrounding his arrest and the fact that he would stand trial in Wood County, on or around June 2, 2017, Mr. McGee asked Plaintiff if he would consider signing an affidavit in support of his motion to change venue. Mr. McGee did not believe he would receive a fair and impartial trial in Wood County. Plaintiff shared this belief, and he spoke to Mr. McGee's lawyer about signing the affidavit. The affidavit set forth two primary reasons for Mr. McGee's requested venue change: (1) pretrial publicity, and (2) alleged personal relationships between Sheriff Tom Castloo ("Sheriff Castloo"), Wood County District Attorney James Wheeler ("DA Wheeler"), and State District Judge Jeff Fletcher ("Judge Fletcher"). The material portions of the affidavit, which Plaintiff executed on June 2, 2017, are reproduced below.

> My name is TERRY BEVILL. I am currently the Quitman Police Department Captain and the former Jail Administrator for Hopkins County, and a formal investigator with Wood County Sherriff's office. I am over the age of 18 and competent to make this oath.
>
> I believe it will not be possible for DAVID MCGEE to get a fair and impartial trial in Wood County, Texas due to the pre-trial publicity involved in this case and the personal relationship between the Sheriff, the District Attorney, and the Presiding Judge in this matter. I am very familiar with the close relationships between these influential persons, and DAVID MCGEE will be greatly prejudiced by having a trial in Wood County.
>
> It is not possible for DAVID MCGEE to obtain a fair and impartial trial in Wood County, Texas because there is a dangerous combination against Defendant instigated by influential persons that a fair and impartial trial cannot be obtained.
>
> This suit should be heard in RAINS County, Texas, where it is possible to obtain a fair and impartial trial.

(Dkt. #38).

Mr. McGee's attorney filed the motion to change venue with Plaintiff's affidavit and affidavits from Mayra McGee and Mr. McGee, which were similar to Plaintiff's. And it was the events that followed the filing of the motion to change venue that gave rise to Plaintiff's complaint.

2

Apparently, shortly after the motion was filed, Sheriff Castloo, DA Wheeler, and Judge Fletcher approached City of Quitman Mayor, David Dobbs ("Mayor Dobbs"), to discuss Plaintiff's affidavit and his continued employment with Quitman PD. Plaintiff claims that Sheriff Castloo, DA Wheeler, and Judge Fletcher threatened to retaliate against the city of Quitman by withholding Wood County resources and support for Quitman PD if Plaintiff was not fired for the affidavit he signed in support of Mr. McGee's motion.

Quitman Police Chief, Kelly Cole ("Chief Cole"), supposedly objected to Plaintiff's termination, preferring instead to handle the matter internally. Plaintiff claims Mayor Dobbs's response was to put the pressure on Chief Cole by passing along Sheriff Castloo, DA Wheeler, and Judge Fletcher's threats to withhold resources from the City and from Quitman PD if Plaintiff was not fired.

On or about June 8, 2017, Chief Cole informed Plaintiff that he was being placed on administrative leave pending an internal investigation. Shortly thereafter, on June 21, 2017, Plaintiff was fired. Chief Cole presented Plaintiff with the findings from the investigation that ultimately led to his termination. The investigation revealed that Plaintiff's actions violated certain Quitman PD policies. The policies Plaintiff is alleged to have violated are reproduced in full below.

> Chapter 11, Section 11.20.3 – Members of the Department shall not take part or be concerned, either directly or indirectly, in making or negotiating any compromise or arrangement for any criminal or person to escape the penalty of law. Employees shall not seek to obtain any continuance of any trial in court out of friendship for the Defendant or otherwise interfere with the courts of justice. This section shall not be construed as preventing an employee from cooperating with the city attorney or the prosecuting attorney in altering any charge, or other action, in the furtherance of justice in any case he/she may be concerned with as the arresting or investigating officer.

> Chapter 12 (code of conduct standard 4.9) – Peace officers shall at all times conduct themselves in a manner which does not discredit the Peace Officer profession or their employing agency.

(Dkt. #38).

The day following Plaintiff's termination, Sheriff Castloo, DA Wheeler, Judge Fletcher, and Chief Cole attended a Quitman City Council meeting. There, Sheriff Castloo discussed the details surrounding Plaintiff's affidavit and a newspaper article from the *Wood County Monitor* publicizing those details. According to Plaintiff, the meeting minutes indicated that Sheriff Castloo was disappointed in the city's lack of a public response to Plaintiff's affidavit and thought the city should refute Plaintiff's statements expressed in the affidavit and do more to support the DA's office, the Sherriff's office, and Judge Fletcher in the matter. Moreover, the *Wood County Monitor* reported that Sheriff Castloo also told the City Council: "I understand you have taken some steps. I understand more steps need to be taken" (Dkt. #38).

Mr. McGee's motion to transfer venue was eventually denied, and after a two-day trial in Judge Fletcher's court, a jury found him guilty. At the conclusion of Mr. McGee's trial, Judge Fletcher announced in open court that he was issuing a warrant for Plaintiff's arrest for aggravated perjury, which is a felony offense. Judge Fletcher called Plaintiff's statements in Mr. McGee's affidavit "lie[s], plain and simple," "reprehensible," and "disrespectful of every law enforcement officer and officer of the court who do their best each day." In response to the warrant for his arrest, Plaintiff voluntarily turned himself in. Judge Fletcher apparently set bond at $20,000, which was later reduced to $10,000, and required that Plaintiff satisfy the following bond conditions: (1) turn over all of his firearms; (2) submit to drug testing every two weeks at a cost of $20 per test; (3) obtain prior written permission from the Wood County Community Supervision and Corrections Department or the court before leaving Wood County; (4) report to the Wood County

Community Supervision and Corrections Department every two weeks; and (5) abstain from the use of alcohol. According to Plaintiff, he complied with each bond condition.

Plaintiff's felony charges were pending for the next sixteen months. Plaintiff alleges that DA Wheeler refused to bring his case before a grand jury in an effort to unnecessarily prolong the conspiracy in retaliation for Plaintiff having submitted the affidavit for Mr. McGee. By October 2018, the Texas Rangers began investigating DA Wheeler for official oppression. DA Wheeler ultimately resigned his office in lieu of the risk of facing prosecution. Ten days after DA Wheeler resigned, Plaintiff's case was submitted to a grand jury. On October 31, 2018, the grand jury no-billed Plaintiff for the aggravated perjury charge.

## II.     Procedural History

On July 12, 2019, Defendants Tom Castloo, James Wheeler, and Wood County, Texas filed a Motion to Change Venue (Dkt. #22). On August 13, 2019, Defendant filed a Response (Dkt. #39). On August 20, 2019, Defendants Tom Castloo, James Wheeler, and Wood County, Texas filed a Reply (Dkt. #43).

### LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 313 (5th Cir. 2008). However, there is a strong presumption in favor of a plaintiff's choice of his or her home venue, "which may be overcome only when the private and public factors [cited

below] clearly point towards trial in the alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Id.* (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties have consented to a particular jurisdiction." *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, 4:17-CV-00682, 2018 WL 2463795, at *1 (E.D. Tex. June 1, 2018) (quoting *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004)). If the threshold inquiry is satisfied, "the focus shifts to whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Int'l Fidelity Ins. Co. v. Bep Am., Inc., et al.*, A-17-CV-973-LY, 2018 WL 2427377, at *2 (W.D. Tex. May 29, 2018) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974)).

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations omitted). These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *Vivint La., LLC v. City of Shreveport*, CIV.A. 14-00617-BAJ, 2015 WL 1456216, at *3 (M.D. La. Mar. 23, 2015) (quoting *Volkswagen I*, 371 F.3d at 203).

## ANALYSIS

The Court has wide discretion in deciding motions for intra-district transfers. *Madden v. City of Wills Point*, 2:09–cv–250, 2009 WL 5061837, at *1 (E.D. Tex. Dec. 15, 2009). Indeed, the district court has wide discretion in deciding the place of trial, so long as it is within the same district, even without the consent of the parties. *Morrow v. Washington*, No. 2:08–cv–288, 2008 WL 5203843, at *2 (E.D. Tex. Dec. 11, 2008) (citing FED. R. CIV. P. 77(b)). Therefore, courts in this district view § 1404(a) motions for intra-district transfer of venue with heightened caution and grant them only when the "balancing of convenience and public interest factors results in a firm conclusion that the proposed new venue is decidedly more convenient and in the interest of justice." *Rios v. Scott*, No. 1:02–cv–136, 2002 WL 32075775, at *4 (E.D. Tex. July 26, 2002).

There is no dispute that the case could have been filed originally in the destination venue—the Eastern District of Texas, Tyler Division. Thus, the threshold inquiry is satisfied and the Court next considers the public and private interest factors.

### I. Public Interest Factors

The public interest factors are:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law.

*Volkswagen II*, 545 F.3d at 315 (citations omitted).

7

First, the parties do not dispute whether there exist any administrative difficulties in either district flowing from court congestion, and the Court is aware of none. Accordingly, the Court considers the first public interest factor neutral.

The parties do, on the other hand, dispute the second public interest factor—the local interest in having localized disputes decided at home. After consideration, the Court finds that this factor weighs in favor of transfer.

The events giving rise to this action occurred in Wood County. Plaintiff is a resident of Wood County. Defendants are residents of Wood County, and some are or were Wood County public officials. Thus, the Tyler Division, which comprises Wood County, has a significant local interest in resolving this case. The Sherman Division does, however, also have some local interest in the resolution of this case. Indeed, all of the underlying actions occurred in the Eastern District, of which the Sherman Division is a part, and courts in this district have given that consideration weight under the second public interest factor.

For example, in *Grimes v. Lukfin Indus., Inc.*, the plaintiff was a Lufkin, Texas resident, and the defendant had a place of business there. *Grimes v. Lufkin Indus., Inc.*, No. 2:09-cv-307, 2009 WL 5062053, at *1 (E.D. Tex. Dec. 16, 2009). The suit arose when the plaintiff's employment with the defendant was terminated—an event that occurred in Lufkin. *Id.* The plaintiff filed suit in Marshall Division and the defendant moved to transfer venue to the Lufkin Division. *Id.* at *2. The court denied the defendant's motion. *Id.* The court reasoned that "[w]hile there might be more 'local' interest in the Lufkin Division rather than the Marshall Division, all of the underlying actions in this case occurred in the Eastern District of Texas." *Id.* at *3. On that basis, the Court concluded that the "local interest" factor was neutral and denied the plaintiff's motion to transfer to the Lufkin Division. *Id.*

In another case from this district, *Madden v. City of Will Point*, all the events giving rise to the plaintiff's cause of action occurred in the Tyler Division; five of the six named plaintiffs and the defendant were located in the Tyler Division; and the witnesses most likely to be called were all within the Tyler Division. *Madden v. City of Will Point*, No. 2:09-cv-250, 2009 WL 5061837, at *1 (E.D. Tex. Dec. 15, 2009). The plaintiff filed suit in the Marshall Division, and the defendant filed a motion to transfer venue to the Tyler Division. *Id.* The court denied the motion. *Id.* at *3. It concluded that, though the Tyler Division had more local interest in the case than the Marshall Division, its local interest tipped the scales *only slightly* in favor of a transfer to the Tyler Division. *Id.*

In still another case from this district, *Smith v. Michels Corp.*, virtually all the events and witnesses associated with plaintiff's injury were in the Texarkana Division. *Smith v. Michels Corp.*, No. 2:13-cv-00185, 2013 WL 4811227, at *4 (E.D. Tex. Sept. 9, 2013). The defendant moved to transfer to the Texarkana Division, and the court denied the motion. *Id.* It held that, though the suit had no connection to the Marshall Division and a clear connection to the Texarkana Division, this "did *not* obviously compel transfer." *Id.* (internal quotations omitted). The court explained that the lawsuit's connection to the transferor division, though an interest to be considered, is not the court's only consideration. *Id.* Specifically, the court stated:

> Indeed, the Court's duty in analyzing the *Gilbert* factors is not merely an exercise in determining the division in which the events occurred and the witnesses reside. Such a simplistic abstraction of the facts of each case obscures the realities of any actual inconveniences or lack thereof. . . . This Court takes the Fifth Circuit's affirmation of the statutory language as quoted in *Volkswagen II* on face value— the transferee venue must be *clearly* more convenient. Such is plainly not the case here.

*Id.*

9

Turning to this case, the Court acknowledges the importance of the fact that the parties are in the Tyler Division and the events giving rise to this action occurred there. On balance, therefore, the Tyler Division's local interest in resolving this case outweighs the Sherman Division's interest, and thus the second factor counsels in favor of transfer. But in view of the foregoing precedent from this district, the Court is not persuaded that this factor should be given dispositive or even disproportionate weight in comparison to the other factors.

The final two public interest factors are neutral. The Sherman Division and the Tyler Division are both located in the Eastern District of Texas, and there is no indication that either division has greater familiarity than the other with the governing law in this action. Moreover, a transfer from the Sherman Division to the Tyler Division would not help avoid any conflict of law issues that may arise in this case. Accordingly, the third and fourth public interest factors are neutral.

## II. Private Interest Factors

The private interest factors are:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Volkswagen II*, 545 F.3d at 315 (citations omitted).

The first private interest factor is neutral. The parties both agree that all motion practice and discovery will occur in the same location, regardless of whether the case is transferred. Moreover, Defendant does not demonstrate that any other factor related to accessing relevant sources of proof, such as the location of physical documents or transporting them to Sherman instead of to Tyler, will create an inconvenience for either party. *See Dong Sik Yoo v. Kook Bin Im*, No. 4:17-CV-00446, 2018 WL 549957, at *7 (E.D. Tex. Jan. 24, 2018) ("[T]he location of

documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'") (quoting *Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)). Indeed, Defendants baldly state that "all sources of proof will be found in Wood County" without providing any explanation whatsoever as to how and to what extent that will affect the parties. Neither do they identify which sources of proof will be more easily accessed in the Tyler Division than in the Sherman Division. The Fifth Circuit has made clear that it is the "*relative* ease of access, not *absolute* ease of access" that is the relevant question. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Without some indication as to which sources of proof Defendants refer, the Court is not in a position to say that access to those sources of proof will be relatively easier in the Tyler Division than in the Sherman Division. Accordingly, because the Sherman Division and Tyler Division appear to have roughly equal access to relevant sources of proof, the Court considers the first private interest factor neutral.

The second private interest factor—the availability of compulsory process to secure the attendance of witnesses—is neutral. There is no witness identified by either party who would be subject to compulsory process in the Tyler Division but not the Sherman Division, or vice versa. Defendants claim otherwise, albeit not until their reply, arguing that "[b]ecause Quitman is more than 100 miles from Sherman, compulsory service would not be available for witnesses from Quitman." For the reasons set forth below, however, Defendants are incorrect.

Federal Rule of Civil Procedure 45 provides that the court may compel a person to attend a trial, deposition, or hearing:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; *or*
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>   (i) is a party or a party's officer; or

11

> (ii) is commanded to attend a trial and would not incur substantial expense.

FED. R. CIV. P. 45 (emphasis added).

In other words, a federal district court's subpoena power is not necessarily limited to the 100-mile radius from the court's brick-and-mortar location. Federal district courts can command nonparty witnesses located more than 100 miles from the courthouse to comply with a subpoena provided the witness resides, is employed, or regularly transacts business within the state *and* would not incur substantial expense by complying. *Potter v. Cardinal Health 200, LLC.*, No. 2:19-cv-00007, 2019 WL 2150923, at *3 (E.D. Tex. May 16, 2019) ("[A] district court has subpoena power over residents of the state in which the district court sits . . . non-party residents can be . . . compelled as long as their attendance would not result in 'substantial expense.'") (quoting FED. R. CIV. P. 45(c)(1)(B)(i)–(ii)); *Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 641–42 (E.D. Tex. 2011) (distinguishing *absolute* subpoena power, which the court enjoys over witnesses located fewer than 100 miles from the courthouse, from the court's general subpoena power, which it enjoys over witnesses within the state) (citing *Volkswagen II*, 545 F.3d at 316); *see also Williams v. City of Cleveland*, 848 F. Supp. 2d 646, 656 (N.D. Miss. 2012) ("Aberdeen is certainly over 100 miles from Cleveland, which meets the distance requirement in [Rule 45(c)], but, since both cities are located in Mississippi, this Court has the authority to order residents to attend trial in Aberdeen. This authority is subject to [Rule 45(d)].").

Thus, Defendants are incorrect to assert that the Sherman Division would lack the power to command a nonparty witness from Quitman, Texas to attend trial in Sherman. According to Defendants, Quitman is 101 miles from Sherman—just 1 mile outside the Court's absolute subpoena power under Rule 45—and 35 miles from Tyler. The Court's power to compel a witness residing in Quitman to attend trial in Sherman, therefore, would be limited only to the extent that

12

the witness would incur substantial expense by complying.[1] So the question is whether traveling 101 miles as opposed to 35 miles would cause the witnesses traveling that distance to incur substantial expenses. The Court finds that the 101 miles to Sherman would not create substantial expenses for witnesses.

Defendants' primary argument for this factor is that mileage reimbursement costs would be higher for witnesses who have to travel from Quitman to Sherman rather than from Quitman to Tyler. But the Court is simply not persuaded that there is any substantial expense associated with traveling 101 miles to attend trial; indeed, traveling to Sherman rather than Tyler represents only an additional 66 miles. Without some further indication that the witnesses from Quitman would incur *substantial expense* by attending trial in Sherman instead of Tyler, the Court finds that all the likely witnesses are equally within the subpoena power of the Tyler Division and the Sherman Division. Thus, the second factor is neutral.

The third private interest factor weighs against transfer. In the Fifth Circuit, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The federal courthouse in Sherman, Texas is 127 miles from the federal courthouse in Tyler, Texas.[2] Thus, the Court will

---

[1] This limitation is enforced by Rule 45(d), in which a subpoena must be quashed if it causes the witness to incur substantial expense in traveling more than 100 miles. But that mandate is qualified by the committee notes to the 2013 Amendment to Rule 45: "When travel over 100 miles could impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment." FED. R. CIV. P. 45(c)–(d) advisory committee's note to 2013 amendment. For the reasons stated in this Order, the Court finds it highly unlikely that traveling 101 miles from Quitman to Sherman would even come close to imposing an impermissible burden on the potential Quitman witnesses. But even to the extent that it did, the Court could *still* enforce that subpoena simply by requiring the plaintiff to pay those expenses.

[2] This distance, and the distances that follow, are determined by using Google Maps. The Court uses 101 E. Pecan St., Sherman, TX 75090 for the Sherman courthouse; 211 Ferguson St., Tyler, TX 75702 for the Tyler courthouse; and the city name for Austin, Dallas, Rockwall, and Southlake, as the parties do not provide specific addresses for the witnesses located in those cities.

consider the relative distance that the proposed witnesses must travel, giving more consideration to the nonparty witnesses. Indeed, it is the nonparty witnesses whose convenience is the most important consideration. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) (citations omitted).

In the first place, it is undisputed that party witnesses and witnesses within the control of the parties are in or around Wood County, Texas, which is closer to the Tyler division than the Sherman Division. Thus, the Tyler Division would be the more convenient forum for the party witnesses. However, the convenience to proposed nonparty witnesses is the more important consideration. And Plaintiff has identified the name and location of a handful of key nonparty witnesses who are either closer to the Sherman division or are roughly equidistant from the Sherman Division and the Tyler Division.

For example, Lance Wyatt is located in Southlake, Texas, which is 72.4 miles from the federal courthouse in Sherman but 126 miles from the federal courthouse in Tyler. Scott Cournuaud and Linda Guyton are located in Rockwall, Texas, which is 65.7 miles from the federal courthouse in Sherman but 86.6 miles from the federal courthouse in Tyler. Marcelain Dufour Fletcher and Misty Bevill are located in Dallas, Texas, which is 65.4 miles from the federal courthouse in Sherman but 98 miles from the federal courthouse in Tyler. Finally, T. Robbins and Richard Henderson are located in Austin, Texas. Austin is 223 miles from the federal courthouse in Tyler and 265 miles from the federal courthouse in Sherman. Defendants do not provide the names and locations of any potential nonparty witnesses. Accordingly, it appears that for the majority of proposed nonparty witnesses—four of the six provided—the Sherman Division would be more convenient than the Tyler Division in terms of distance. Giving more weight to the convenience of nonparty witnesses, the Court finds that the third factor weighs against transfer.

Finally, the Court is not aware of any specific practical problems that would tend to make trial of this case in the Tyler Division any easier, more expeditious, or less expensive than it would be if tried in the Sherman Division. Accordingly, the Court finds that the fourth factor is neutral.

The Court thus finds that six (6) of the private and public interest factors are neutral, one (1) factor weighs against transfer, and one (1) factor weighs in favor of transfer. On balance, the Court finds that Defendants have not satisfied their burden to show that the Tyler Division is a "*clearly* more convenient" forum for this litigation. *Volkswagen II*, 545 F.3d at 315 (emphasis added). Accordingly, Defendants' motion for an intra-district transfer should be denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants Tom Castloo, James "Jim" Wheeler and Wood County's Motion to Transfer Venue (Dkt. #22) is **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 3rd day of December, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE