# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TERRY BEVILL, | § | |
|     *Plaintiff*, | § | |
| | § | Civil Action No. 4:19-cv-406 |
| v. | § | Judge Mazzant |
| | § | |
| CITY OF QUITMAN, TEXAS, *et al.*, | § | |
|     *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Judge Jeffrey Fletcher's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #48) and Defendants Tom Castloo, James "Jim" Wheeler and Wood County, Texas' Partial Motion to Dismiss or, in the Alternative, Request for a Rule 7(a) Reply on the Issue of Qualified Immunity (Dkt. #49).

After consideration, the Court finds that Judge Fletcher's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #48) should be **GRANTED in part** and **DENIED in part** and Defendants Tom Castloo, James "Jim" Wheeler and Wood County, Texas' Partial Motion to Dismiss or, in the Alternative, Request for a Rule 7(a) Reply on the Issue of Qualified Immunity (Dkt. #49) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I.      Factual Summary

At the time the events giving rise to this lawsuit occurred, Plaintiff Terry Bevill was the Captain of the Quitman Police Department ("Quitman PD") and an instructor at the Kilgore Police Academy. On or around February 8, 2017, while Plaintiff still occupied his position with Quitman PD, a man named David McGee ("Mr. McGee") was arrested and charged with facilitating or permitting the escape of an inmate from the Wood County jail and with tampering with

government records while employed as a Wood County jail administrator. Mr. McGee's arrest apparently attracted pretrial publicity in the area.

Recognizing the publicity of the circumstances surrounding his arrest and the fact that he would stand trial in Wood County, on or around June 2, 2017, Mr. McGee asked Plaintiff if he would consider signing an affidavit in support of his motion to change venue. Mr. McGee did not believe he would receive a fair and impartial trial in Wood County. Plaintiff shared this belief, and he spoke to Mr. McGee's lawyer about signing the affidavit. The affidavit set forth two primary reasons for Mr. McGee's requested venue change: (1) pretrial publicity, and (2) alleged personal relationships between Sheriff Tom Castloo ("Sheriff Castloo"), Wood County District Attorney James Wheeler ("DA Wheeler"), and State District Judge Jeff Fletcher ("Judge Fletcher"). The material portions of the affidavit, which Plaintiff executed on June 2, 2017, are reproduced below.

> My name is TERRY BEVILL. I am currently the Quitman Police Department Captain and the former Jail Administrator for Hopkins County, and a formal investigator with Wood County Sheriff's office. I am over the age of 18 and competent to make this oath.
>
> I believe it will not be possible for DAVID MCGEE to get a fair and impartial trial in Wood County, Texas due to the pre-trial publicity involved in this case and the personal relationship between the Sheriff, the District Attorney, and the Presiding Judge in this matter. I am very familiar with the close relationships between these influential persons, and DAVID MCGEE will be greatly prejudiced by having a trial in Wood County.
>
> It is not possible for DAVID MCGEE to obtain a fair and impartial trial in Wood County, Texas because there is a dangerous combination against Defendant instigated by influential persons that a fair and impartial trial cannot be obtained.
>
> This suit should be heard in RAINS County, Texas, where it is possible to obtain a fair and impartial trial.

(Dkt. #38).

Mr. McGee's attorney filed the motion to change venue with Plaintiff's affidavit and affidavits from Mayra McGee and Mr. McGee, which were similar to Plaintiff's. And it was the events that followed the filing of the motion to change venue that gave rise to Plaintiff's complaint. Apparently, shortly after the motion was filed, Sheriff Castloo, DA Wheeler, and Judge Fletcher approached City of Quitman Mayor, David Dobbs ("Mayor Dobbs"), to discuss Plaintiff's affidavit and his continued employment with Quitman PD. Plaintiff claims that Sheriff Castloo, DA Wheeler, and Judge Fletcher threatened to retaliate against the city of Quitman by withholding Wood County resources and support for Quitman PD if Plaintiff was not fired for the affidavit he signed in support of Mr. McGee's motion.

Quitman Police Chief, Kelly Cole ("Chief Cole"), supposedly objected to Plaintiff's termination, preferring instead to handle the matter internally. Plaintiff claims Mayor Dobbs's response was to put the pressure on Chief Cole by passing along Sheriff Castloo, DA Wheeler, and Judge Fletcher's threats to withhold resources from the City and from Quitman PD if Plaintiff was not fired.

On or about June 8, 2017, Chief Cole informed Plaintiff that he was being placed on administrative leave pending an internal investigation. Shortly thereafter, on June 21, 2017, Plaintiff was fired. Chief Cole presented Plaintiff with the findings from the investigation that ultimately led to his termination. The investigation revealed that Plaintiff's actions violated certain Quitman PD policies. The policies Plaintiff is alleged to have violated are reproduced in full below.

> Chapter 11, Section 11.20.3 – Members of the Department shall not take part or be concerned, either directly or indirectly, in making or negotiating any compromise or arrangement for any criminal or person to escape the penalty of law. Employees shall not seek to obtain any continuance of any trial in court out of friendship for the Defendant or otherwise interfere with the courts of justice. This section shall not be construed as preventing an employee from cooperating with the city attorney

or the prosecuting attorney in altering any charge, or other action, in the furtherance of justice in any case he/she may be concerned with as the arresting or investigating officer.

Chapter 12 (code of conduct standard 4.9) – Peace officers shall at all times conduct themselves in a manner which does not discredit the Peace Officer profession or their employing agency.

(Dkt. #38).

The day following Plaintiff's termination, Sheriff Castloo, DA Wheeler, Judge Fletcher, and Chief Cole attended a Quitman City Council meeting. There, Sheriff Castloo discussed the details surrounding Plaintiff's affidavit and a newspaper article from the *Wood County Monitor* publicizing those details. According to Plaintiff, the meeting minutes indicated that Sheriff Castloo was disappointed in the city's lack of a public response to Plaintiff's affidavit and thought the city should refute Plaintiff's statements expressed in the affidavit and do more to support the DA's office, the Sherriff's office, and Judge Fletcher in the matter. Moreover, the *Wood County Monitor* reported that Sheriff Castloo also told the City Council: "I understand you have taken some steps. I understand more steps need to be taken" (Dkt. #38).

Mr. McGee's motion to transfer venue was eventually denied, and after a two-day trial in Judge Fletcher's court, a jury found him guilty. At the conclusion of Mr. McGee's trial, Judge Fletcher announced in open court that he was issuing a warrant for Plaintiff's arrest for aggravated perjury, which is a felony offense. Judge Fletcher called Plaintiff's statements in Mr. McGee's affidavit "lie[s], plain and simple," "reprehensible," and "disrespectful of every law enforcement officer and officer of the court who do their best each day." In response to the warrant for his arrest, Plaintiff voluntarily turned himself in. Judge Fletcher apparently set bond at $20,000, which was later reduced to $10,000, and required that Plaintiff satisfy the following bond conditions: (1) turn over all of his firearms; (2) submit to drug testing every two weeks at a cost of $20 per test;

(3) obtain prior written permission from the Wood County Community Supervision and Corrections Department or the court before leaving Wood County; (4) report to the Wood County Community Supervision and Corrections Department every two weeks; and (5) abstain from the use of alcohol. According to Plaintiff, he complied with each bond condition.

Plaintiff's felony charges were pending for the next sixteen months. Plaintiff alleges that DA Wheeler refused to bring his case before a grand jury in an effort to unnecessarily prolong the conspiracy in retaliation for Plaintiff having submitted the affidavit for Mr. McGee. By October 2018, the Texas Rangers began investigating DA Wheeler for official oppression. DA Wheeler ultimately resigned his office in lieu of the risk of facing prosecution. Ten days after DA Wheeler resigned, Plaintiff's case was submitted to a grand jury. On October 31, 2018, the grand jury no-billed Plaintiff for the aggravated perjury charge.

## II.  Procedural History

On August 27, 2019, Judge Fletcher filed a motion to dismiss Plaintiff's first amended complaint (Dkt. #48). On September 17, 2019, Plaintiff filed a response (Dkt. #65). On September 26, 2019, Judge Fletcher filed a reply (Dkt. #72). On December 31, 2019, Plaintiff filed a Sur-reply (Dkt. #83). On January 21, 2020, Judge Fletcher filed a Sur-Sur-Reply (Dkt. #88).

On August 27, 2019, Sheriff Castloo, DA Wheeler, and Wood County filed a motion to dismiss Plaintiff's first amended complaint (Dkt. #49). On September 10, 2019, Plaintiff filed a response (Dkt. #60). On September 17, 2019, Sheriff Castloo, DA Wheeler, and Wood County filed a reply (Dkt. #64).

# LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556

U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I.     Unconstitutional Retaliatory Employment Termination in Violation of 42 U.S.C. § 1983 ("First Cause of Action").

Plaintiff brings the First Cause of Action against the City of Quitman and Mayor Dobbs. Neither the City of Quitman nor Mayor Dobbs has filed a motion to dismiss in this case. Accordingly, the Court need not address the First Cause of Action at this time and Plaintiff is free to pursue it against the above-named Defendants.

### II.    Conspiracy to Commit Unconstitutional Retaliatory Employment Termination in Violation of 42 U.S.C. § 1983 ("Second Cause of Action").

Plaintiff brings the Second Cause of Action against the City of Quitman, Mayor Dobbs, Sheriff Castloo, DA Wheeler, and Judge Fletcher. As discussed above, neither the City of Quitman nor Mayor Dobbs has filed a motion to dismiss in this case. Therefore, the Court will address the Second Cause of Action only as against Sheriff Castloo, DA Wheeler, and Judge Fletcher.

In the Fifth Circuit, to prevail on a § 1983 conspiracy claim, the plaintiff must show that the defendants agreed to commit an unlawful act. *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.

1979).  The plaintiff must show "the existence of a conspiracy involving state action and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Id.*; *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).  But in order to determine whether a plaintiff has an actionable § 1983 conspiracy claim, the Court first looks to the underlying alleged § 1983 violation.  *See Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir. 1995). If the "state action alleged to have harmed the plaintiff[] was determined to be qualifiedly immune, there [is] no need to reach the issue of whether a conspiracy existed to engage in those actions." *Id.* at 921 (citing *Pfannstiel*, 918 F.2d at 1187–88).  Accordingly, the Court will turn first to the question whether Sheriff Castloo, DA Wheeler, and Judge Fletcher are entitled to qualified immunity from the underlying claim: First Amendment retaliation.

*Qualified Immunity*

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678.  Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).  Second, if a constitutional

right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton*, 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

A.      *Was There a Violation of a Constitutional Right?*

The underlying violation here is First Amendment retaliation (Dkt. #38). Plaintiff claims that he was terminated because he exercised his First Amendment rights in signing the affidavit for Mr. McGee. To state a claim for First Amendment retaliation, Plaintiff's allegations must establish the following: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). There does not appear to be dispute

as to elements one and four; Plaintiff was fired, and he was fired because he executed the affidavit in support of Mr. McGee's motion to transfer venue. Accordingly, the Court will focus on the second and third elements.

1. Second Element

If an employee did not speak as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). On the other hand, if the employee did speak as a citizen on a matter of public concern, "then the possibility of a First Amendment claim arises." *Id.* Central to this analysis is the distinction between speech as a *citizen* and speech as an *employee*. *Lane v. Franks*, 573 U.S. 228, 237 (2014). Speech as a citizen may trigger First Amendment protection, but "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* (quoting *Garcetti*, 547 U.S. at 421).

Here, the Court is satisfied that Plaintiff's statements in the affidavit he executed in favor of Mr. McGee's motion to transfer venue were made in his capacity as a citizen rather than as a public employee. The only argument Sheriff Castloo, DA Wheeler, and Wood County make in their motion to dismiss is that Plaintiff spoke in his capacity as a public employee because his affidavit statements concerned "a course of conduct subject to [his] employer's control" (Dkt. #49). But the Court is unpersuaded by this argument, as the Supreme Court has articulated a different standard for whether speech was made as a citizen or employee.

The Supreme Court, in *Garcetti*, made clear that just because speech may concern the subject matter of the speaker's public employment does not necessarily make it employee speech.

*Garcetti*, 547 U.S. at 420–21. Indeed, "[t]he First amendment protects some expressions related to the speaker's job." *Id.* at 421. And the Supreme Court in *Lane* adopted this reasoning in holding that a person's speech is not transformed "into employee—rather than citizen—speech" merely because the speech concerns information acquired as a result of the speaker's public employment. *Lane*, 573 U.S. at 239–40 (citing *Garcetti*, 547 U.S. at 421). Instead, the question is whether the speech at issue ordinarily falls within the scope of the speaker's job duties, "not whether it merely concerns those duties." *Id.*

Applying the standard as articulated in *Garcetti* and *Lane*, the Court finds that Plaintiff's affidavit statements were not made in the course of his ordinary job duties. Plaintiff was a personal friend of Mr. McGee, made the affidavit statements voluntarily, and did so without speaking to anyone in Quitman PD. Plaintiff's statements clearly had nothing at all to do with his employment as captain of Quitman PD. Without any further indication that Plaintiff's speech was in some way related to carrying out his ordinary job duties, the Court is persuaded that Plaintiff's statements were speech as a citizen. *See also Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016) (holding that Plaintiff's involvement in an FBI investigation regarding crimes committed by his coworkers was not in furtherance of his ordinary job duties and thus constituted speech as a citizen rather than as an employee).

Moreover, Plaintiff's speech must also have been on a matter of public concern to receive First Amendment protection. There does not appear to be any meaningful dispute between the parties as to whether Plaintiff's statements implicated a matter of public concern, so the Court will not address that prong of the analysis. Accordingly, the Court finds that Plaintiff has adequately pleaded that his statements constituted speech as a citizen on a matter of public concern.

2. Third Element

Given that Plaintiff spoke as a citizen on a matter of public concern, the next question concerns "whether the government had 'an adequate justification for treating [him] differently from any other member of the public' based on the government's needs as an employer." *Lane*, 573 U.S. at 242 (quoting *Garcetti*, 547 U.S. at 418). After consideration, the Court is of the opinion that the government does not have an interest in the efficient provision of its services that comes close to outweighing Plaintiff's interest in speaking out on this matter. Plaintiff's interest in speaking out about the potential existence of corruption or conspiracy among public officials is clearly significant enough to tip the scales in his favor with respect to the third element. And restricting Plaintiff's speech here is certainly not "necessary for [Quitman PD] to operate efficiently and effectively."[1] *Garcetti*, 547 U.S. at 419.

Accordingly, because all four factors weigh in Plaintiff's favor, the Court finds that Plaintiff has adequately pleaded a constitutional violation of First Amendment retaliation.

B.  *Was the Constitutional Right Clearly Established at the Time of the Violation?*

The second question the Court must address in the qualified immunity analysis is "whether the right was clearly established at the time of the violation." *Cooper*, 844 F.3d at 522. "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 524 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)). But "this does not mean that 'a case directly on point' is required." *Id.*

---

[1] In fact, Defendants do not argue to the contrary. It is noteworthy that none of the Defendants against whom Plaintiff brings his second cause of action contest this element beyond a short one-sentence paragraph on the penultimate page of their motion to dismiss (Dkt. #49).

(quoting *Morgan*, 659 F.3d at 372). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *Morgan*, 659 F.3d at 372).

"The central concept is 'fair warning.'" *Id.* (quoting *Morgan*, 659 F.3d at 372; *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Newman*, 703 F.3d at 763).

To evaluate whether the law surrounding First Amendment retaliation was clearly established at the time of Plaintiff's termination, the Court is guided by Fifth Circuit decisions issued before June 21, 2017—the date Plaintiff was fired from Quitman PD. The first case that the Court will examine, which appears to be on all fours with the present case, is the Fifth Circuit's 2004 decision in *Kinney v. Weaver*.

In *Kinney*, Plaintiffs Dean Kinney ("Kinney") and David Hall ("Hall") were instructors at the East Texas Police Academy ("ETPA"), a division of Kilgore College, which provides training to law enforcement officers in the greater East Texas area. *Kinney v. Weaver*, 367 F.3d 337, 341 (5th Cir. 2004) (en banc). After a teenager in Texas was fatally shot by a police sniper, Plaintiffs testified voluntarily as expert witnesses for the family of the deceased. *Id.* at 341–42. Among other things, Plaintiffs testified that the officer who delivered the fatal shot had used excessive force under the circumstances. *Id.* at 341. Shortly thereafter, Police Officials[2] from various police departments in Texas contacted the president of Kilgore College and threatened to stop using the

---

[2] The facts in the Fifth Circuit indicate that various police officials, at different times, communicated with William Holda—president of Kilgore College—about Plaintiffs' continued employment with the ETPA. For purposes of convenience, the Court will refer to the following individuals collectively as "Police Officials": Bobby Weaver, Gregg County Sheriff; J.B. Smith, Smith County Sheriff; Bill Young, Tyler Police Chief; Bob Green, Harrison County Sheriff; Chuck Williams, City of Marshall Police Chief; Ted Gibson, Nacogdoches Police Chief; and Ronnie Moore, Kilgore Director of Public Safety.

ETPA for officer training if Plaintiffs remained employed there. *Id.* at 342–43. And after various discussions among the Police Officials, they "followed through on their threats both by cancelling enrollments in the plaintiffs' classes and by barring their officers from enrolling in the plaintiffs' courses in the future." *Id.* at 345. Plaintiffs' classes were eventually dropped from the ETPA schedule, and as a result, Hall eventually resigned, and Kinney's contract was not renewed after its expiration. *Id.*

Plaintiffs sued the Police Officials in their individual capacities under § 1983 for unconstitutional First Amendment retaliation. *Id.* at 345–46. In particular, Plaintiffs claimed that the Police Officials "unlawfully retaliated against them for exercising their rights to free speech guaranteed by the First Amendment." *Id.* at 355–56. The Police Officials sought summary judgment, asserting the defense of qualified immunity. *Id.* at 346. The district court denied the Police Officials' motion, which the Police Officials then appealed. *Id.* On appeal, the Fifth Circuit concluded first that there was a genuine factual dispute as to whether the Police Officials violated Plaintiffs' constitutional rights. *Id.* at 367. The Fifth Circuit then turned to whether, at the time the violation in question occurred, the law on the issue was clearly established, and it held that it was. Specifically, the Fifth Circuit held that:

> It is plain that the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation. . . . [T]he Police Officials pursued [Plaintiffs] not because of genuine conflicts of interests but instead merely because [Plaintiffs] had testified against a police officer.

*Id.* at 369. The Fifth Circuit then found further support for its conclusion in a line of precedent in which it held that factually analogous retaliatory conduct violated the plaintiff's clearly established First Amendment rights. *See id.* at 370–71 ("The *Rainey* decisions are themselves part of a long series of First Amendment cases in which we have condemned retaliation against court testimony,

including retaliation against employees who gave testimony adverse to their employers' interests.").[3]  Accordingly, the Fifth Circuit found that the Police Officials' conduct was objectively unreasonable in light of clearly established law.

Several years after the *Kinney* decision, the Fifth Circuit was presented on three occasions with a similar, albeit distinguishable, question to that in the present case: whether a non-final decisionmaker can be liable for First Amendment retaliatory termination.  *See Pennypacker v. City of Pearl*, 689 F. App'x 332 (5th Cir. 2017); *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016); *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015).  In two of those cases, *Pennypacker* and *Culbertson*, the Fifth Circuit dismissed the plaintiff's First Amendment retaliation claims outright on the ground that it was not clearly established at the time that a non-final decisionmaker could be liable for First Amendment retaliatory termination.  *Pennypacker*, 689 F. App'x at 332 ("It is not clearly established in this circuit whether these individual defendants may be held personally liable for First Amendment retaliation under § 1983."); *Culbertson*, 790 F.3d at 627 ("It was unsettled at the time of Palmer's actions, and remains so now, whether someone who is not a final decisionmaker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983.").  In the third, *Howell*, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's First Amendment retaliation claim on a different ground but discussed the unsettled nature of the law surrounding liability for First Amendment retaliation. *Howell*, 827 F.3d at 526 ("Our precedents, at a minimum, cast uncertainty on the proposition that an individual must be the actual 'final decision maker' to be held liable in an individual capacity for a First Amendment retaliation.").

---

[3] For more on these decisions, see *Rainey v. Jackson State Coll.*, 435 F.2d 1031 (5th Cir. 1970) ("*Rainey I*"), *Rainey v. Jackson State Coll.*, 481 F.2d 347 (5th Cir. 1973) ("*Rainey II*"), *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989), and *Reeves v. Claiborne Cty. Bd. of Educ.*, 828 F.2d 1096 (5th Cir. 1987).

And then came *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018), which Judge Fletcher claims is dispositive as to the clearly established prong of the qualified immunity analysis here (Dkt. #72). Because the *Sims* case is central to Judge Fletcher's motion to dismiss,[4] the Court will examine it at length.

In the district court, Mr. Sims, a former police officer with the Madisonville Police Department, brought a First Amendment retaliation claim against the City of Madisonville and then-police Sergeant Jeffery Covington. *Sims v. Covington*, No. CV H-14-2145, 2016 WL 3144158, at *3 (S.D. Tex. June 6, 2016). The record indicates that, while working for the Madisonville Police Department, Mr. Sims heard certain compromising rumors about Sergeant Covington and reported them up his chain of command to the Police Chief. *Id.* at *1. The Police Chief apparently did not believe him and took no action. *Id.* About nine months later, Mr. Sims found audio and video recordings on Sergeant Covington's work computer that tended to confirm the rumors he had heard, and he downloaded the files and turned them in. *Id.* at *2. Mr. Sims maintained that he did so as a citizen out of his concern about police department corruption. *Id.* Sergeant Covington later discovered that Mr. Sims's computer contained one of his files and recommended to the Police Chief that he be fired. *Id.* The Police Chief fired Mr. Sims shortly after receiving Sergeant Covington's recommendation. *Id.*

Mr. Sims claimed that Sergeant Covington, "motivated by retaliatory animus, improperly influenced [the Police Chief's] decision to fire him." *Id.* at *5. But, crucially, it was not Sergeant Covington who fired him. *Id.* Indeed, the record established that Sergeant Covington did not have authority to make final employment decisions. *Id.* Rather, it was the Police Chief who had the authority to make final employment decisions, and he was not a defendant in the case. *See id.* On

---

[4] Technically, Judge Fletcher did not alert the Court to the *Sims* case, nor illustrate it and discuss its applicability to this case, until his Reply (Dkt. #72).

this basis, the district court granted summary judgment in favor of Sergeant Covington on the individual liability claim for retaliatory termination. *Id.* at *5. It held that he was qualifiedly immune from Mr. Sims's First Amendment retaliation claim. *Id.*

Specifically, the district court held that, "as of 2015, '[i]t was unsettled . . . whether someone who is not a final decision-maker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983.'" *Id.* (quoting *Culbertson*, 790 F.3d at 627). Accordingly, the district court held, the law was not clearly established regarding the right claimed by Mr. Sims, meaning that qualified immunity barred his First Amendment retaliation claim. *Id.*

On appeal, the Fifth Circuit addressed squarely the question whether someone who is not a final decisionmaker can be liable for First Amendment retaliation. *Sims*, 894 F.3d at 638. Recognizing the tension in Fifth Circuit caselaw on this issue, the Fifth Circuit attempted to harmonize its recent decisions and remedy any uncertainties. *Id.* The Fifth Circuit's holding here is important and worth quoting at length:

> *Beattie*, *Johnson*, and subsequent cases thus inadvertently created the uncertainty we have recognized in this area. We now provide the overdue clarification. Because it is at odds with our earlier holding in *Jett*, *Johnson*'s absolute bar on First Amendment liability for those who are not final decisionmakers is not binding. Nor are the imputation principles of cat's paw liability applicable to an effort to hold a nondecisionmaker liable. *Jett*'s "causal link" standard sets the causation requirement for a suit against an individual defendant with retaliatory motives who does not make the final employment decision. . . . Although today's decision clarifying that *Jett* controls means the law will no longer be "unsettled" in this area, it provides no recourse to [plaintiff]. . . . When [plaintiff] was terminated in July 2012 the inconsistency in our law on whether First amendment liability can attach to a public official who did not make the final employment decision had not been resolved. . . . If judges have mixed up principles of individual and municipal liability in this area and failed to recognize *Jett* as the controlling decision, law enforcement officials should not be expected to have a more nuanced understanding of section 1983 law.

*Id.* at 641 (internal citations omitted).

That is, the precise contours of First Amendment retaliation liability in this context were not settled until the *Sims* decision in 2018. With *Sims* and its predecessors in mind, the Court turns now to this case. Plaintiff claims that he was fired on June 21, 2017, which was prior to the *Sims* decision. Thus, to the extent that *Sims* and its predecessors are applicable to the facts in the present case, Plaintiff's First Amendment retaliation claim would be foreclosed on the ground that, at the time of the alleged violation, it was not clearly established that a non-final decisionmaker could be held liable. But the Court finds the present case readily distinguishable from *Sims* and its predecessors.

Specifically, as Plaintiff observes, *Pennypacker*, *Culbertson*, *Howell*, and *Sims* all involved retaliatory employment termination in the context of an employment relationship. In other words, they all involved, in one form or another, a plaintiff's attempt to hold a *subordinate* employee liable for influencing a *supervisor's*—the final decision maker's—decision to terminate the plaintiff. It is in that context that *Sims* really helps clarify the Fifth Circuit's jurisprudence, allowing the imposition of liability on a subordinate employee in certain circumstances when the subordinate's retaliatory animus sets into motion a series of events that culminates in an adverse employment action—executed by the supervisor or employer with final decisionmaking authority—in violation of the First Amendment. But neither *Sims*, nor its predecessors, contemplated the situation in which a government employee, because of retaliatory animus, uses his or her position to influence a *third-party* employer to terminate one of its employees for exercising his or her First Amendment rights. That situation is instead contemplated by *Kinney*, in which the Court held in 2004 that it had long been clear that a government official cannot seek to influence the employer of an ordinary citizen to fire him or her in retaliation for giving "unwelcome testimony." *See Kinney*, 367 F.3d at 369–70. The facts here are thus more akin to

those in *Kinney* than those in *Sims* and its predecessors; accordingly, the Court is satisfied that it was clearly established at the time Plaintiff was fired from Quitman PD that DA Wheeler's, Judge Fletcher's, and Sheriff Castloo's conduct violated Plaintiff's constitutional rights.

To be sure, the Court recognizes that these circumstances are unique and implicate important interests. It is not every day that there are allegations of a conspiracy between a state court judge, a district attorney, and a county sheriff to have a police captain fired for exercising his First Amendment rights. But novel circumstances alone do not preclude a finding that the conduct at issue was objectively unreasonable in light of clearly established law at the time of the violation: as the Supreme Court has established, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Therefore, the Court is satisfied that Judge Fletcher, DA Wheeler, and Sheriff Castloo had "fair warning" that allegedly using their respective government positions to violate Plaintiff's First Amendment rights would be objectively unreasonable in light of clearly established law at the time. Because the Court finds that one or more of Judge Fletcher, DA Wheeler, and Sheriff Castloo are not entitled to qualified immunity, the Court turns now to whether Plaintiff sufficiently pleaded a conspiracy claim.

*Conspiracy to Violate § 1983*

To prevail on a claim of conspiracy to violate § 1983, the plaintiff must show "the existence of a conspiracy involving state action and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel*, 918 F.2d at 1187. After considering Plaintiff's pleadings, the Court is satisfied that Plaintiff has carried his burden of pleading both the existence of a conspiracy involving state action and the deprivation of his civil rights in furtherance

of that conspiracy. Accordingly, both motions to dismiss the Second Cause of Action should be denied.

### III. Unconstitutional Oppression, Intimidation, and Retaliation in Contravention of the First Amendment and in Violation of 42 U.S.C. § 1983 ("Third Cause of Action").

Plaintiff brings the Third Cause of Action against Wood County and Sheriff Castloo. With respect to the claim against Sheriff Castloo, the Court is not familiar with a cause of action against an individual for unconstitutional oppression or intimidation. To the extent the Plaintiff brings a claim for First Amendment retaliation against Sheriff Castloo individually, that claim is addressed in Section II, *supra*, or in Section IV, *infra*.

However, Plaintiff also brings a claim against Wood County for having a policy and custom that allows for harassment, oppression, and retaliation against private citizens. The Court turns to that claim next.

*Municipal Liability*

When alleging a § 1983 claim, a plaintiff may not establish liability against a government entity through respondeat superior. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-cv-615, 2017 WL 2262778, at *3 (E.D. Tex. May 24, 2017), *memorandum adopting in part*, No. 4:16-cv-615, Dkt. #36 (E.D. Tex. Apr. 19, 2017). Accordingly, plaintiffs must plead and prove that the government entity "itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95). To establish that the government entity caused the constitutional violation, the Fifth Circuit requires a showing that an "official policy" caused the plaintiff's harm. *Deville*, 567 F.3d at 170. The Fifth Circuit has explained that an official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

After consideration, the Court finds that Plaintiff has at least plausibly alleged a claim against Wood County that it had policies or customs that allowed for unconstitutional harassment, oppression, and retaliation against private citizens like Plaintiff. Accordingly, Wood County's motion to dismiss the Third Cause of Action should be denied.

## IV. Conspiracy to Violate 42 U.S.C. § 1983 (Conspiracy: Criminal Prosecution) ("Fourth Cause of Action").

Plaintiff brings the Fourth Cause of Action against Wood County, Sheriff Castloo, DA Wheeler, and Judge Fletcher for conspiracy to violate § 1983. Plaintiff claims that Sheriff Castloo and DA Wheeler conspired with Judge Fletcher to misuse the criminal justice system and have Plaintiff arrested and criminally prosecuted in retaliation for exercising his First Amendment rights by executing the affidavit. Specifically, it appears as though the Fourth Cause of Action is essentially a claim for conspiracy to commit retaliatory arrest and prosecution.

Because this is a claim for conspiracy to violate § 1983, the Court looks first to the underlying alleged § 1983 violation. *See Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir. 1995). Only to the extent that the Defendants in question would not be immune from liability for the underlying violation may Plaintiff pursue a § 1983 conspiracy claim. The Court will thus turn to the potential immunities of the above-named Defendants.

*Judge Fletcher*

Plaintiff's claim for conspiracy to commit retaliatory arrest and criminal prosecution against Judge Fletcher arises from Judge Fletcher issuing a warrant for his arrest in open court following the conclusion of Mr. McGee's trial and attaching certain bond conditions to that warrant. The affidavit Plaintiff executed in favor of Mr. McGee's motion to transfer venue included Plaintiff's sworn testimony that personal relationships existed between Sheriff Castloo, DA Wheeler, and Judge Fletcher that would prevent Mr. McGee from receiving a fair trial in Wood County. There is no dispute that Judge Fletcher's response to this was to issue a warrant for Plaintiff's arrest. Rather, the dispute centers around *why* he issued the warrant and whether doing so was a judicial act. Plaintiff claims that Judge Fletcher issued the warrant for his arrest in retaliation for his affidavit statements and that doing so was outside of his capacity as a judge. Judge Fletcher, on the other hand, claims that the warrant was justified because Plaintiff's affidavit statements were false and amounted to aggravated perjury, which is a felony. He asserts judicial immunity for his conduct, claiming that his issuance of a warrant for Plaintiff's arrest was a perfectly lawful act carried out in his judicial capacity.

An assertion of judicial immunity is overcome in only two circumstances. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge does not enjoy judicial immunity for nonjudicial actions—actions taken outside of the judge's judicial capacity. *Id.* Second, a judge does not enjoy judicial immunity for "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. "Judicial immunity is not overcome by allegations of bad faith or malice." *Id.* at 11; *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.").

Indeed, "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Whether a judge was acting in his or her judicial capacity—that is, whether the function performed was judicial in nature—depends on four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). The factors are construed broadly in favor of immunity. *Id.*

Applying the factors, the Court finds that Judge Fletcher's conduct was judicial in nature. Issuing an arrest warrant and attaching certain conditions of bond to that warrant are normal judicial functions routinely carried out by judges. Moreover, the acts complained of occurred in Judge Fletcher's courtroom and centered around Mr. McGee's case, which had just concluded when Judge Fletcher called for Plaintiff's arrest. Finally, the acts arose directly out of a visit to the judge in his official capacity. Plaintiff submitted his sworn affidavit to Judge Fletcher, the presiding judge in Mr. McGee's lawsuit, and the statements contained in that affidavit are what gave rise to the arrest warrant. Accordingly, the Court is of the opinion that the acts complained of were judicial in nature.

Moreover, Judge Fletcher's actions were not taken in the complete absence of all jurisdiction. Plaintiff does not meaningfully argue otherwise. Therefore, because both factors are met, the Court finds that Judge Fletcher is entitled to judicial immunity.

*DA Wheeler*

The Supreme Court of the United States established that prosecutors are "immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). But prosecutors are not entitled to immunity simply by virtue of their title; instead, courts are to look to the "'functional nature of the activities' of which the plaintiff complains." *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) (citations omitted); *accord Imbler*, 424 U.S. at 431; *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997). It is the prosecutor's burden to establish that the "functional nature of the activities" is protected by prosecutorial immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993).

Prosecutors are immune "insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted). This does not mean that only actions made during trial are protected; the courts have recognized that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* (citations omitted). The Fifth Circuit determined that prosecutorial immunity extends to "investigating . . . a criminal prosecution." *Cook v. Hous. Post*, 616 F.2d 791, 793 (5th Cir. 1980) (citing *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979); *Conner v. Pickett*, 552 F.2d 585 (5th Cir. 1976)).

"[T]he existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature [, as opposed to the investigatory nature,] of prosecutorial conduct." *Cousin v. Small*, 325 F.3d 627, 633 (5th Cir. 2003) (citing *Buckley*, 509 U.S. at 274).

Turning to the facts at hand, the Court finds that DA Wheeler is entitled to immunity for initiating criminal charges against Plaintiff and subsequently submitting them to a grand jury.

Looking to the "functional nature" of DA Wheeler's conduct, it appears that it was prosecutorial in nature. Prosecutors have a duty to represent the interests of the State, and initiating a prosecution and presenting the State's case is central to carrying out that duty. DA Wheeler initiated criminal charges pursuant to a validly issued arrest warrant, and the Court is satisfied that his actions were "intimately associated with the judicial phase of the criminal process." *Cousin*, 325 F.3d at 631. Therefore, DA Wheeler is protected by prosecutorial immunity.

*Sheriff Castloo*

It is not entirely clear to the Court what Sheriff Castloo's involvement was in Plaintiff's arrest and the subsequent criminal charges that were brought against him. Plaintiff's amended complaint indicates that, before Plaintiff's arrest, Sheriff Castloo told the City Council that "more steps needed to be taken" regarding Plaintiff's discipline; that Sheriff Castloo was the official policymaker for Wood County; and that Plaintiff voluntarily turned himself in for arrest to Sherriff Castloo's office after receiving word that Judge Fletcher had issued a warrant for his arrest. Beyond that, Plaintiff does not aver anything further about Sheriff Castloo's involvement in his arrest and subsequent prosecution.

"As a prerequisite [to § 1983 liability], a plaintiff 'must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)); *see also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (same).

The Court cannot see how Sheriff Castloo was personally involved in either Plaintiff's arrest or the pursuit of criminal charges against him following his arrest. Judge Fletcher issued

the arrest warrant on his own—that is, without recommendation from Sheriff Castloo or any other public official—and then DA Wheeler pursued the criminal charges against him.  Sheriff Castloo did not even do so much as seek Plaintiff out to arrest him—Plaintiff turned himself in.  Sheriff Castloo did not appear to participate in any meaningful way in Plaintiff's arrest that would give rise to any kind of violation of Plaintiff's constitutional rights.  Accordingly, because Sheriff Castloo did not participate in any violation of Plantiff's constitutional rights, the Court finds that Plaintiff failed to state a claim under § 1983 against Sheriff Castloo.  *See Woods*, 51 F.3d at 583.

*Wood County*

That leaves Plaintiff's claim against Wood County.  Plaintiff asserts that Wood County was a coconspirator vis-à-vis Sheriff Castloo as the official policymaker for law enforcement in Wood County.  As Plaintiff points out, in Texas, Sheriff Castloo is the "official policymaker" for law enforcement in Wood County.  *See Turner v. Upton Cty*, 915 F.2d 133, 136 (5th Cir. 1990) ("It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected[.]").  Thus, any illegal or unconstitutional actions taken by Sheriff Castloo with respect to Plaintiff's criminal prosecution could be considered the actions of the county and may be sufficient to impose liability on the county.  *See Turner*, 915 F.2d at 136–37; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986).  However, as discussed previously, the Court is not persuaded that Sheriff Castloo participated in any meaningful way in Plaintiff's criminal prosecution; therefore, there are no illegal or unconstitutional acts committed by Sheriff Castloo that could be attributed to Wood County for purposes of § 1983.  Accordingly, Plaintiff cannot bring a claim against Wood County on this basis.

In sum, Plaintiff failed to state a plausible § 1983 violation against Sheriff Castloo and Wood County. As Sheriff Castloo did not participate in any meaningful way in Plaintiff's arrest and subsequent prosecution, Plaintiff does not have a viable claim against either Sheriff Castloo or Wood County—vis-à-vis Sheriff Castloo's actions—for conspiracy to violate § 1983. *See Hale*, 45 F.3d at 920 (stating that a plaintiff cannot pursue a conspiracy claim without an actual § 1983 violation). Moreover, Judge Fletcher and DA Wheeler are immune from liability for the underlying § 1983 claim. Therefore, their immunity from liability for the underlying § 1983 claim precludes a claim against them for conspiracy to violate § 1983. Accordingly, Plaintiff's Fourth Cause of Action should be dismissed.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Judge Jeffrey Fletcher's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #48) is **GRANTED in part** and **DENIED in part**. Plaintiff may pursue the Second Cause of Action against Judge Fletcher. However, Plaintiff's claim against Judge Fletcher with respect to the Fourth Cause of Action is **DISMISSED with prejudice**.

It is further **ORDERED** that Defendants Tom Castloo, James "Jim" Wheeler and Wood County, Texas' Partial Motion to Dismiss or, in the Alternative, Request for a Rule 7(a) Reply on the Issue of Qualified Immunity (Dkt. #49) is **GRANTED in part** and **DENIED in part**.

Plaintiff may pursue the First Cause of Action, which is brought against only Mayor Dobbs and the City of Quitman.

In addition to his claim against Judge Fletcher, Plaintiff may pursue the Second Cause of Action against Mayor Dobbs, the City of Quitman, Sheriff Castloo, and DA Wheeler.

Plaintiff may pursue the Third Cause of Action against Wood County. However, Plaintiff's claim against Sheriff Castloo with respect to the Third Cause of Action is **DISMISSED with prejudice**.

In addition to his claim against Judge Fletcher, Plaintiff's claims against DA Wheeler, Sheriff Castloo, and Wood County with respect to the Fourth Cause of Action are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

**SIGNED this 5th day of March, 2020.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE