# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TERRY BEVILL, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:19-cv-406 |
| | § | Judge Mazzant |
| CITY OF QUITMAN, TEXAS, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff's Motion for Attorney Fees (Dkt. #347) and Bill of Costs (Dkt. #344). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

1. Plaintiff's Motion for Attorney Fees (Dkt. #347) should be **GRANTED**; and

2. Plaintiff's Bill of Costs (Dkt. #344) should be **GRANTED in part** and **DENIED in part.**

## BACKGROUND

The facts underlying this case are extensive and set out fully in the Court's August 11, 2025, Memorandum Opinion and Order on the parties' post-trial motions, which the Court incorporates into this Order by reference (Dkt. #372). The pertinent facts before the Court today exclusively relate to fees and costs.

On December 3, 2024, Plaintiff Terry Bevill ("Plaintiff") filed his Motion for Attorney Fees (Dkt. #347). Through it, he seeks to recover $1,342,144.00 in "fair and reasonable attorney fees and related nontaxable expenses" (Dkt. #347 at p. 2). The same day, Plaintiff filed his Bill of

Costs (Dkt. #344) in which he also seeks to recover $22,933.51.[1] Defendants oppose both motions. As to Plaintiff's Motion for Attorney Fees, Defendants contend that the fees that Plaintiff seeks are "excessive and unsupported" (Dkt. #349). Defendants challenge Plaintiff's Bill of Costs, arguing that it does not comply with the governing statute, the Court's Local Rules, and seeks to recover costs not taxable under the statute (Dkt. #350). On January 14, 2025, Plaintiff filed a Joint Reply to both of Defendants' Responses (Dkt. #359), prompting Defendants to file a Joint Sur-Reply (Dkt. #362).

## LEGAL STANDARD

### I. Attorneys' Fees

42 U.S.C. § 1988(b) authorizes district courts to award reasonable attorneys' fees to the prevailing party in a § 1983 case. *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022). An award of fees under § 1988 must be proportional and should compensate only time that was "reasonably expended in support of successful claims." *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). The proper fee amount to award, however, is within the discretion of the district court. *Id.* at 437; *see also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The Court uses the lodestar to determine the reasonable amount of attorneys' fees to award to a prevailing party. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The lodestar is calculated by multiplying the number of hours an attorney spent on the case by an appropriate hourly rate. *Id.* at 502. A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and

---

[1] In Plaintiff's Reply to Defendants' Joint Objection to Plaintiff's Bill of Costs, Plaintiff withdrew his request for $551.00 in fees attributable to service of summons and subpoena (Dkt. #359 at p. 1 n.2). The Court will evaluate the reasonableness of Plaintiff's requested taxation of costs using the revised amount of $22,382.51 (Dkt. #359 at p. 1).

2

reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The lodestar is presumptively reasonable. *Watkins*, 7 F.3d at 457.

The party seeking attorneys' fees must present adequately recorded time records. *Id.* The Court uses this time as a benchmark and excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably spent. *Id.*

The Court then considers whether the circumstances warrant a lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any adjustment, the Court considers twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and

3

labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

## II.  Bill of Costs

Federal Rule of Civil Procedure 54(d) dictates that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). This provision "creates a 'strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012)); *see also Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). This is so because the denial of costs is considered "in the nature of a penalty." *Shwarz*, 767 at 131.

Awardable costs are set forth by the federal costs statute, 28 U.S.C. § 1920. Under § 1920, courts may award the following types of costs to the prevailing party:

1. Fees of the clerk and marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under 28 U.S.C. § 1923;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

*Id.* § 1920. The United States "Supreme Court has indicated that federal courts may only award those costs articulated in § 1920 absent explicit statutory or contractual authorization to the

4

contrary." *Cook Children's Med. Ctr. v. The N. Engl. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007). The party seeking recovery under § 1920 bears the burden of proving the amount and necessity of those costs. *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015) (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). The prevailing party carries the burden to demonstrate that the costs it seeks are recoverable. *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 804 (E.D. Tex. 2012), *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013).

The Court has discretion to deny costs when the "'suit was brought in good faith *and* denial is based on at least one of the following factors: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (4th ed. 1998).

## ANALYSIS

The Court's analysis will proceed in two parts. First, the Court will evaluate the reasonableness of Plaintiff's requested attorneys' fees using the lodestar method and *Johnson* factors. Then, the Court will analyze the parties' arguments related to Plaintiff's requested bill of costs and determine if Plaintiff's requested costs are reasonable and necessary. The Court addresses each argument in turn.

5

I.     **Attorneys' Fees**

The Court's first task is to determine the amount of attorneys' fees that Plaintiff seeks. What may seem as a simple perfunctory task has been complicated by the parties' differing calculations. In his Motion for Attorney Fees, Plaintiff initially requests an award of $1,342,144.00 (Dkt. #347). After crunching the numbers, Defendants suggest that Plaintiff has made a mathematical error in calculating his requested amount and offer $1,316,368.00 as the correct amount, though they still maintain their objections to the reasonableness of that amount (Dkt. #349). In his Reply, Plaintiff concedes that he miscalculated his requested amount and proposes a requested award of $1,312,143.75 (Dkt. #359). Defendants do not dispute that amount in their Sur-Reply (*See* Dkt. #362). However, given the importance of precision in granting attorneys' fees, the Court calculates the correct amount requested below:

| Attorney | Timeframe | Hours | Rate | Total |
|---|---|---|---|---|
| Ms. Geisler | Pre-2020 | 68.95 | $500 | $34,475.00 |
| | Post-2020 | 686.65 | $750 | $514,987.50 |
| Mr. McCaffity | Pre-2022 | 68.5 | $500 | $34,250.00 |
| | Post-2022 | 384.75 | $750 | $288,562.50 |
| Ms. Rodenberg | Pre-2022 | 169 | $350 | $59,150.00 |
| | Post-2022 | 554.25 | $500 | $277,125.00 |
| Ms. Neumann | N/A | 276.25 | $375 | $103,593.75 |
| | | | **TOTAL** | **$1,312,143.75** |

Based upon the above calculation, Plaintiff requests $1,312,143.75 in attorneys' fees. Plaintiff does not expressly request an upward adjustment in the lodestar (*See* Dkt. #347). Plaintiff's counsel has, however, submitted an accompanying affidavit attesting to each of the *Johnson* factors (Dkt. #347-1). She asserts that (1) this case required a considerable amount of time and labor given its journey through two interlocutory appeals and trial; (2) the nature of the case (a conspiracy claim against powerful locally-elected officials) presented novel and difficult issues;

(3) the complexity of the case required significant skill; (4) the number of defendants and risk involved required significant factual and legal research from experienced attorneys; (5) the $350, $375, $500 and $750 fees applicable at different times and for different attorneys throughout this litigation are customary; (6) the attorneys billed hourly on a fixed fee arrangement; (7) the case presented time limitations as Plaintiff sought representation just months before limitations on his claims were set to expire; (8) the trial was successful and culminated in a $21,350,000.00 damages award; (9) the four attorneys have good reputations and substantial experience and skill as litigators; and (10) the accusations of public corruption made this case undesirable to the point that "Mr. Bevill could not find a local area lawyer to represent him" (Dkt. #347 at pp. 4–8).

Defendants object on two broad grounds. First, they contend that Plaintiff's proposed rates are unreasonable in light of prevailing rates within the Eastern District of Texas and median fees, and that Plaintiff's affidavit does not establish that the proposed rates are customary (Dkt. #349 at pp. 6–10). Second, they argue that the number of hours that Plaintiff billed are excessive due to redundant billing, block billing, and excessive time (Dkt. #349 at pp. 11–14). Accordingly, Defendants propose a blended rate of no more than $350 per hour and a fifty percent reduction in hours (Dkt. #349 at p. 14).

### A. Hourly Rate

The Court begins with the hourly rate. Four are at issue: (1) the $500 hourly rate for Ms. Geisler pre-2020, Mr. McCaffity pre-2022, and Ms. Rodenberg post-2022; (2) the $750 hourly rate for Ms. Geisler post-2020 and Mr. McCaffity post-2022; (3) the $350 hourly rate for Ms. Rodenberg pre-2022; and (4) the $375 hourly rate for Ms. Neumann (*See* Dkt. #347). Defendants take issue with Plaintiff's proposed hourly rates for three reasons. First, they question Plaintiff's

7

submission of an affidavit of counsel, instead of surveying other attorneys practicing in the community (Dkt. #349 at pp. 8–10). Second, they argue that the rates for Plaintiff's counsel do not comport with prevailing rates in the Eastern District of Texas (Dkt. #349 at pp. 6–8). Third, they question why Ms. Geisler's, Mr. McCaffity's, and Ms. Rodenberg's rates increased over the course of the litigation (Dkt. #349 at pp. 9–10). None of Defendants' arguments are persuasive.

First, the Court looks to Ms. Geisler's Declaration (Dkt. #347-1). Through it, Ms. Geisler lays out in detail the qualifications of herself, Mr. McCaffity, Ms. Rodenberg, and Ms. Neumann (Dkt. #347-1 at ¶¶ 2–10). As to her own experience, Ms. Geisler cites her twenty-seven years of litigation experience and her time as President of the Dallas Bar Association, which, in her view, qualifies her to opine on reasonable hourly rates (Dkt. #347-1 at ¶¶ 2–5). Defendants, however, disagree. To Defendants, Ms. Geisler's affidavit testimony is no more than "*ipse dixit* of what she believes her time and her colleagues' time is worth" (Dkt. #349 at pp. 2, 9). The Court sees it differently. Typically, parties establish the reasonable hourly rate through affidavits of other attorneys practicing in the community. *Tollett*, 285 F.3d at 368. But "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012). The trial court itself is also considered an expert as to the reasonableness of attorneys' fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorneys' fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)). Here, the Court is satisfied that Ms. Geisler is sufficiently qualified to opine on prevailing reasonable hourly billing rates.

8

Having determined that Ms. Geisler is qualified to testify to market rates, the Court examines those rates. Defendants aver that "[t]he community relevant to this case encompasses the Eastern District of Texas, at its broadest" (Dkt. #349 at p. 5). The Court disagrees. Indeed, this Court has previously determined that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates. *See Solferini v. Corradi USA, Inc.*, No. 4:18-cv-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases). In any event, courts throughout this district—including this Court—have commonly held that rates similar to those billed here are reasonable. *See, e.g.*, *id.* (finding $650 hourly rate to be reasonable for attorney licensed 13 years); *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450 to $860 per hour to be reasonable rates); *Copeland v. Alamo Billing Co.*, No. 420CV00393SDJCAN, 2021 WL 7500786 (E.D. Tex. Dec. 17, 2021), *report and recommendation adopted*, No. 4:20-CV-393-SDJ, 2022 WL 782742 (E.D. Tex. Mar. 14, 2022) (finding a range from $200 to $615 per hour to be reasonable rates); *see also Cici Enters., LP v. TLT Holdings, LLC*, No. 3:21-CV-2121-S-BT, 2023 WL 9689032, at *2 (N.D. Tex. July 31, 2023) (holding that rates ranging from $250 to $750 per hour were "reasonable and comport with prevailing rates in the [Dallas-Fort Worth] community"). The Court concludes the same here. Plaintiff's counsel billed reasonable rates in line with the prevailing local market rate.

Finally, the Court briefly addresses Defendants' objection to the increase in hourly rates charged throughout the course of this litigation (Dkt. #349 at pp. 9–10). Defendants complain that "Ms. Geisler does [not] explain [why] the reasonable rate for her and Mr. McCaffity[] was $500.00 per hour on December 31, 2019, but jumped to $750.00 per hour one day later, on January 1, 2020" (Dkt. #349 at p. 9). But "[o]f course, hourly rates increase as time passes." *Frew v. Janek*, No.

9

3:93CV65, 2013 WL 12177838, at *2 (E.D. Tex. Jan. 7, 2013) (citing *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)). And it makes sense that they would here, given the more than five years that it took for this case to progress to trial and a verdict. Accordingly, it is to be expected that attorney rates change over time, and the Court concludes that the increases in Plaintiff's counsel's rates here were reasonable.

### B.     Hours Billed

Having determined that Plaintiff's counsel charged reasonable hourly rates, the Court turns to the number of hours billed. Defendants challenge Plaintiff's time records for three reasons. First, they accuse Plaintiff of not demonstrating billing judgment (Dkt. #349 at p. 11). Second, they question Ms. Geisler's statement that she "applied reductions to the time entries for any amounts [she] felt were unreasonable or unnecessary" (Dkt. #349 at p. 11). Third and finally, they are skeptical of the billing records themselves, arguing that they are redundant, excessive, and reflect instances of block billing (Dkt. #349 at p. 11). The Court remains unpersuaded.

The Court is satisfied with Ms. Geisler's explanation as to the reasonableness and necessity of the hours billed. Ms. Geisler's Declaration highlights the complexity and political undesirability of this case, the extensive fact and legal research involved before Plaintiff even filed his Complaint, and the significant amount of work required to take this case to verdict (*See* Dkt. #347-1). Though Defendants seem to treat as a conclusory assertion Ms. Geisler's statement that "attorneys' fees in the amount of $1,342,144.00 are reasonable and necessary for the services rendered[,]" her statement finds support not only in the rest of her Declaration, but particularly in light of how this case progressed. This is a complex, multi-defendant, constitutional case involving the violation of Plaintiff's First Amendment rights by elected officials. The case took five years and two appeals

10

before finally being tried to a jury. The briefing involved complicated legal issues—qualified immunity, conspiracy to violate § 1983, and *Monell* liability, to name a few. Given Defendants' ability to appeal the denial of qualified immunity twice over, Plaintiff's counsel had to prepare for two separate oral arguments in front of the Fifth Circuit. Then, they had to prepare for a trial that lasted six-and-a-half days and saw thirteen witness examinations. If the 373 docket entries and the Court's 98-page post-trial Memorandum Opinion and Order are any indication, this was a litigious, factually and legally intensive case that required a considerable amount of work from all parties involved. The 2,139.85 total hours billed in this case were reasonable and necessary given the nature and length of this case. Defendants' arguments to the contrary are unavailing.

Neither do Defendants' arguments as to Plaintiff's billing practices sway the Court. In Defendants' view, Plaintiff's block-billing, redundant billing, and lack of reductions necessitate the Court's intervention to cut Plaintiff's hours in half. The Court will not. As Plaintiff observes, what Defendants consider to be "redundant billing"—the attendance of multiple attorneys at various depositions—was not overkill, but necessary given the party makeup of this case (Dkt. #347-1 at ¶ 16) ("The filing of this lawsuit triggered a barrage of unsuccessful defense filings by six (6) named defendants represented by four (4) different law firms or agencies."). It is unsurprising that Plaintiff brought reinforcements to attend depositions—he was outnumbered. That argument fails. So does Defendants' block billing argument. In the Fifth Circuit,

> [W]e are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Accordingly, though it is true that block billing is not best practice,[2] the Court is satisfied with Plaintiff's time records here. Finally, as to Defendants' assertion that Plaintiff did not adequately implement time reductions as promised, Plaintiff maintains that the reductions are not reflected in the time records because they were implemented before the records were submitted (Dkt. #359 at p. 4). That will do.

In sum, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Plaintiff achieved a resounding success at trial and the jury awarded him $21,350,000.00 accordingly. The high degree of skill and extreme labor involved to obtain that award justifies the fee award that Plaintiff now seeks. Plaintiff's fee request is **GRANTED.**

## II.     Bill of Costs

That brings the Court to costs. Plaintiff requests $22,382.51 (Dkt. #344). Defendants object on two grounds—one procedural and one substantive (*See* Dkt. #350). Defendants' procedural objection argues that Plaintiff failed to comply with the requirements of 28 U.S.C. § 1924 and Local Rule CV-54(b) (Dkt. #350 at pp. 1–2). Their substantive objection contends that many of the costs that Plaintiff seeks are not taxable under § 1920 (Dkt. #350 at pp. 2–4).

Defendants first oppose an award of any costs to Plaintiff because they assert that Plaintiff failed to comply with Local Rule CV-54(b) (Dkt. #350). That Rule imposes certain procedural

---

[2] "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *5 (N.D. Tex. Dec. 20, 2005) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

12

requirements upon a party when filing a bill of costs, including the requirement to submit a proposed bill of costs to the opposing party before filing a contested motion for costs. Local Rule CV-54(b). Because Plaintiff allegedly failed to meet the rule's procedural requirements, Defendants argue that the Court should not award any costs to Plaintiff. Yet, even if Plaintiff failed to meet the rule's procedural requirements, the Court is not obligated to accept Defendants' argument.

It is axiomatic that district courts have the discretion to enforce their own local rules. *In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (citation omitted). Therefore, courts may overlook a party's failure to abide by the local rules and choose to rule on a motion's merits instead. *Brooks v. Firestone Polymers, LLC*, No. 1:12-CV-325, 2014 WL 12713018, at *2 (E.D. Tex. Apr. 4, 2014) (citations omitted). Preferring to rule on the merits here, the Court will overlook Plaintiff's alleged failure to comply with Local Rule CV-54. As to Defendants' objection under § 1924, the Court agrees with Plaintiff that the execution of the verification on Form AO 133 is sufficient to comply with the § 1924 requirements, and the submission of an additional affidavit would be redundant. Accordingly, the Court proceeds to Plaintiff's requested costs.

Pursuant to Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Court may tax the following categories of costs:

(1)   Fees of the clerk and marshal;
(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;
(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)   Docket fees under [28 U.S.C. § 1923]; [and]

13

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920.

In total, Plaintiff requests $22,382.51 in taxable costs, broken down as follows:

| | |
|---|---:|
| Fees of the Clerk | $500.00 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | $15,539.06 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case | $6,343.45 |
| **TOTAL** | **$22,382.51** |

Defendants raise four objections to Plaintiff's requested costs (Dkt. #350 at pp. 3–4). First, they challenge Plaintiff's request for costs associated with a deposition primarily taken for discovery or investigative purposes (Dkt. #350 at p. 3). Second, they question Plaintiff's request to tax charges for "Legal View connectivity, Litigation bundle, and rush costs" (Dkt. #350 at p. 3). Third, they assert that the $6,343.45 that Plaintiff seeks for photocopies is not taxable (Dkt. #350 at pp. 3–4). Fourth and finally, Defendants contend that electronic discovery costs are not recoverable (Dkt. #350 at p. 4). The Court addresses each in turn.

Defendants' first argument is entirely without merit, primarily because Defendants have not even identified which deposition they take issue with (*See* Dkt. #350). Plaintiff seeks attendant costs for the depositions of Kelly Cole, David Dobbs, Jerry Hirsch, Greg Hollen, Jeffrey Fletcher, Jim Wheeler, Lucy Hebron, and Tom Castloo (Dkt. #344-3). All of those witnesses, except Lucy Hebron, were called at trial. Thus, as far as the Court can tell, Defendants' objection must be directed at her deposition. Though they only dedicate one sentence and a citation to this objection, the Court will address it briefly. Defendants cite *Fogleman v. ARAMCO (Arabian Am. Oil Co.)* to argue that "[c]osts associated with a deposition taken primarily for discovery or investigative

purposes are not recoverable" (Dkt. #350 at p. 3) (citing 920 F.2d 278 (5th Cir. 1991)). Defendants' argument stretches *Fogleman* too far. Indeed, in *Fogleman*, the Fifth Circuit observed the following:

> [W]e have consistently held that a deposition need not be introduced into evidence at trial in order to be "necessarily obtained for use in the case." If, at the time it was taken, *a deposition could reasonably be expected to be used for trial preparation*, rather than merely for discovery, it may be included in the costs of the prevailing party.

*Fogleman*, 920 F.2d at 285 (emphasis added). The Court has "wide latitude" in determining "[w]hether a deposition or copy was necessarily obtained for use in the case." *Id*. at 285–86. Exercising that wide latitude, the Court concludes that the depositions included in Plaintiff's Bill of Costs were reasonably expected to be used for trial preparation. *See id*. Thus, they are taxable.

Defendants' second argument is more persuasive. Defendants object to Plaintiff's request to tax $1,160 in costs related to Legal View connectivity, Litigation bundle, and rush costs (Dkt. #350 at p. 3). Defendants contend that those costs are not taxable. Defendants are correct. "Incidental costs associated with depositions . . . are generally not recoverable." *Hearing Component, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2009 U.S. Dist. LEXIS 131117, at *4 (E.D. Tex. May 19, 2009). This Court has refused to award the types of incidental costs Plaintiff seeks, including costs for expedited delivery, as well as costs attributable to ASCII disks, rough drafts, condensed transcripts, and real time reporting. *See Power-One, Inc. v. Artesyn Techs., Inc.*, No. CIV. A. 2:05CV463, 2008 WL 4065871, at *4 (E.D. Tex. Aug. 27, 2008) (costs for expedited processing fees not recoverable); *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 688 (E.D. Tex. 2007) (costs for expedited delivery, ASCII disks, condensed transcripts, and real time reporting not recoverable); *Halliburton Energy Servs. v. M-I, LLC*, 244 F.R.D. 369, 372 (E.D. Tex. 2007) ("All incidental expenses related to taking the depositions including, *inter alia*, parking, real time reporting, rough drafts, condensed transcripts, ASCII, expedited delivery, and FEDEX

15

charges are not recoverable."). In some cases, costs for expedited delivery may be recoverable if the "special character of the litigation necessitates expedited receipt of the transcript." *Fogleman*, 920 F.2d at 286. As discussed, Plaintiff bears the burden to show the reasonableness and necessity of the costs challenged by Defendants. *DietGoal Innovations LLC*, 2015 WL 164072, at *1 (citing *Holmes*, 11 F.3d at 64). Here, Plaintiff has not met his burden in regard to the incidental costs that Defendants challenge. Plaintiff's only defense as to those costs is a citation to *Fogleman* for the proposition that the Court may tax such costs if "'the special character of the litigation necessitates expedited receipt of the transcript'" (Dkt. #359 at p. 7) (citing *Fogleman*, 920 F.2d at 286). But Plaintiff does not demonstrate why that necessity existed here (*See* Dkt. #359 at p. 7). Accordingly, the Court will deduct $1,160 in incidental deposition costs.

Defendants next object to Plaintiff's request for $6,343.45 in costs related to photocopies (Dkt. #350 at pp. 3–4). Again, Plaintiff does little to defend the taxation of those costs. Plaintiff's only argument in support of taxing those costs is as follows:

> [T]he Bill of Costs was supported by the declaration stating that costs were "necessarily incurred." . . . All depositions taken in this case were "necessarily obtained for us[e] in the case," as evidenced by the declaration signed by Laura Benitez Geisler. The same is true for the costs of making copies of any materials where the copies are necessarily obtained for use in the case.

(Dkt. #359 at p. 7) Once more, that is not enough. "[R]eproductions necessarily obtained for use in the case are included within taxable costs, *provided that the prevailing party demonstrates that necessity.*" *Fogleman*, 920 F.2d at 286 (emphasis added). The party seeking to recover costs must make "some demonstration that reproduction costs necessarily result from that litigation." *Id*. Plaintiff made no such demonstration. Accordingly, the Court will deduct $6,343.45 in reproduction costs.

16

Finally, to the extent that Defendants' fourth argument objects to any costs over and above its prior three arguments, those objections are overruled. Defendants seem to object to Plaintiff's Exhibit D (Dkt. #344-4) on the basis that "electronic discovery costs are generally not allowed, including costs for document collection, document processing, and document hosting" (Dkt. #350 at p. 4). But Plaintiff's Exhibit D covers photocopying costs, which the Court already decided to remove from Plaintiff's Bill of Costs. Accordingly, that argument fails.

## CONCLUSION

The Court therefore **ORDERS** as follows:

1. Plaintiff's Motion for Attorney Fees (Dkt. #347) is hereby **GRANTED**; and

2. Plaintiff's Bill of Costs (Dkt. #344) is hereby **GRANTED in part** and **DENIED in part.**

Plaintiff is awarded attorneys' fees in the amount of $1,342,144.00 and $14,879.06 in costs.

**IT IS SO ORDERED.**

**SIGNED this 27th day of August, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE